**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| RAZEL EDWARDS for R.M.,     ) | CASE NO.     3:11-CV-767 |
|     Plaintiff,     ) | |
|     ) | |
| v.     ) | JUDGE JAMES G. CARR |
|     ) | MAGISTRATE JUDGE GREG WHITE |
|     ) | |
| MICHAEL J. ASTRUE,     ) | |
|     Commissioner of Social Security     ) | **REPORT & RECOMMENDATION** |
|     ) | |
|     Defendant.     ) | |

Plaintiff Razel Edwards ("Edwards"), on behalf of her minor child, R.M., challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying her claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381, 20 C.F.R. § 416.924a.  This matter is before the Court pursuant to 42 U.S.C. § 405(g) and Local Rule 72.2(b).

For the reasons set forth below, it is recommended that the final decision of the Commissioner be VACATED and REMANDED for further proceedings consistent with this Report and Recommendation.

## I.  Procedural History

On March 27, 2007, Edwards filed an application for SSI on behalf of her minor child, R.M.  Her application was denied both initially and upon reconsideration.  Edwards timely requested an administrative hearing.

On September 8, 2009, an Administrative Law Judge ("ALJ") held a hearing during which R.M. and Edwards, represented by counsel, testified.  On November 23, 2009, the ALJ

found R.M. did not have an impairment or combination of impairments that met or functionally

equaled the listings.  The ALJ's decision became the final decision of the Commissioner when

the Appeals Council denied further review.

## II.  Evidence

### *Personal and Vocational Evidence*

R.M., born in December of 1997, was eleven years old and a school-age child at the time

of the administrative hearing.  (Tr. 14.)

### *Hearing Testimony*

At the administrative hearing, R.M. testified as follows:

- She was in the sixth grade, she did "very good" the previous school year.  She was not having any problems in school.  (Tr. 58.)

- She has one sibling, a brother in first grade.  (Tr. 59-60.)

- After school, she does her homework.  She also likes to draw.  (Tr. 59.)

- She has friends, gets along with her school mates, and sometimes plays with her brother.  (Tr. 59, 62.)

- She was suspended the previous school year after telling her teacher that she would bash his head against the wall if he took her candy.  (Tr. 60-61.)

- She is able to run, play, and ride a bicycle.  (Tr. 63.)  She helps out around the house.  (Tr. 64.)

- She has no physical problems aside from her heart.  (Tr. 65.)

- She takes her medications before and after school.  (Tr. 68.)

Edwards, R.M.'s mother, also testified as follows:

- R.M. was suspended two or three times the previous year for behavioral issues, including threatening a teacher.  (Tr. 58-59.)

- Though R.M. was born with a congenital heart defect and had surgery, she is in good shape.  She takes medication for her heart, because her behavioral medications cause her heart to race.  She is under a doctor's care, but her activities are not restricted.  (Tr. 62.)

- R.M. was diagnosed with attention deficit disorder ("ADD") and receives treatment at the Zeff Center.  (Tr. 62.)  She sees a doctor, Dr. Raman, once a month and a therapist, Joyce Williams, weekly.  (Tr. 63.)

- R.M.'s medications help, though they were recently changed because she started having hallucinations again.  (Tr. 63.)

2

- She described R.M.'s problems as a tendency to go off task, and behavioral issues stemming from her inability to express emotions in a proper manner.  (Tr. 66.)  R.M. is below average in most subjects, and has an individual education plan ("IEP").  (Tr. 69.)  The single goal of the IEP is to have R.M. express her emotions appropriately.  However, she feels the IEP should be amended to include staying on task.  (Tr. 75.)

- R.M. has attempted suicide and engaged in self mutilation by digging into her skin.  (Tr. 66.)

- She was called into school more than ten times last year due to problems with R.M.  (Tr. 66.)

- R.M. helps at home, but only under her direct supervision.  (Tr. 67.)

- R.M. does not have friends her own age. (Tr. 67, 74.)

- R.M. receives additional tutoring at the Learning Club of Toledo above and beyond what normally would be allotted for children in special education classes.  (Tr. 69-70.)

- R.M. does not have a problem with attendance aside from missing school when she has medical appointments.  (Tr. 70.)

- R.M. was hospitalized two months earlier, as she had started hallucinating again.  (Tr. 70-71.)  She sees people and objects that are not there, and her hallucinations are disturbing.  (Tr. 71.)

- R.M. is on five medications, four of which are for mental health and behavioral issues.  (Tr. 71-72.)

- R.M. has never gotten into physical altercations with other students.  (Tr. 75.)

### III.  Standard for Disability

To qualify for SSI benefits, an individual must demonstrate a disability as defined under the Act.  "An individual under the age of 18 shall be considered disabled . . . if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C).

To determine whether a child is disabled, the regulations prescribe a three-step sequential evaluation process.  20 C.F.R. § 416.924(a).  At step one, a child must not be engaged in "substantial gainful activity."  20 C.F.R. § 416.924(b).  At step two, a child must suffer from a "severe impairment."  20 C.F.R. § 416.924(c).  At step three, disability will be found if a child

has an impairment, or combination of impairments, that meets, medically equals or functionally equals an impairment listed in 20 C.F.R. § 404, Subpt. P, App'x 1; 20 C.F.R. § 416.924(d).

To determine whether a child's impairment functionally equals the listings, the Commissioner will assess the functional limitations caused by the impairment. 20 C.F.R. § 416.926a(a). The Commissioner will consider how a child functions in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for [ ]self; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). If a child's impairment results in "marked" limitations in two domains, or an "extreme" limitation in one domain, the impairments functionally equal the listings and the child will be found disabled. 20 C.F.R. § 416.926a(d). To receive SSI benefits, a child recipient must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100, 416.1201.

A "marked" limitation is one which seriously interferes with functioning. 20 C.F.R. § 416.926a(e)(2)(i). "Marked" limitation means "more than moderate" but "less than extreme." 20 C.F.R. § 416.926a(e)(2)(i). "It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." *Id*.

An "extreme" limitation is one that "interferes very seriously with [a child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). An "extreme" limitation means "more than marked." 20 C.F.R. § 416.926a(e)(3)(i). "It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean." *Id*.

If an impairment is found to meet, or qualify as the medical or functional equivalent of a listed disability and the twelve-month durational requirement is satisfied, the claimant will be deemed disabled. 20 C.F.R. § 416.924(d)(1).

### IV. Summary of Commissioner's Decision

The ALJ made the following findings regarding R.M. in the November 23, 2009, decision:

4

1.  The claimant was born [in] 1997.  Therefore, she was a school-age child on March 27,2007, the date the application was filed, and is currently a school-age child (20 CFR 416.926a(g)(2)).

2.  The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 416.924(b) and 416.972).

3.  The claimant has the following severe impairments: attention deficit hyperactivity disorder ("ADHD"); anxiety disorder; oppositional defiance disorder ("ODD"); borderline intellectual functioning; and Epstein's anomaly status post repair (20 CFR 416.924(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

5.  The claimant does not have an impairment or combination of impairments that functionally equals the listings (20 CFR 416.924(d) and 416.926a).

6.  The claimant has not been disabled, as defined in the Social Security Act, since March 27,2007, the date the application was filed (20 CFR 416.924(a)).

(Tr. 17-25.)  The ALJ found that R.M. had less than marked limitations in the following four domains: acquiring and using information, attending and completing tasks, interacting and relating with others, and, health and physical well-being.  *Id.*  She further found R.M. had no limitations in the remaining two domains: moving about and manipulating objects, and caring for one's self.  *Id.*

## V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).")  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether the proper legal standard was applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations or failure to provide the reviewing court with a sufficient basis to determine that the Commissioner applied the correct legal standards are grounds for reversal where such failure prejudices a claimant on the merits or deprives a claimant of a substantial right. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272 (6th  Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

## VI.  Analysis

## A.  Treating Psychiatrist

In her second assignment of error, Edwards argues that the ALJ failed to accord controlling weight to the opinion of Dr. Rehman, R.M.'s treating psychiatrist, and failed to provide good reasons for rejecting or discounting her medical opinion.  (ECF No. 14 at 14-17.)

Under Social Security regulations, the opinion of a treating physician or psychiatrist is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 192 F. App'x 456, 560 (6th Cir. 2006) (*quoting* 20 C.F.R. § 404.1527(d)(2)).  "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the

6

opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9). "If the ALJ declines to give a treating source's opinion controlling weight, he must then balance the following factors to determine what weight to give it: 'the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source.'" *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011) (*quoting Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *Meece*, 192 Fed. App'x at 460-61 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.)

Nonetheless, the opinion of a treating physician or psychiatrist must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406 ("It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record.") (*quoting* SSR 96-2p).  Moreover, the ALJ is not bound by conclusory statements of a treating source that a claimant is disabled, but may reject such determinations when good reasons are identified for not accepting them.  *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir.1984).  According to 20 C.F.R. § 404.1527(e)(1), the Social Security Commissioner makes the determination whether a claimant meets the statutory definition of disability.  This necessarily includes a review of all the medical findings and other evidence that support a medical source's statement that one is disabled.  "A statement by a medical source that you are 'disabled' ... does not mean that we will determine that you are disabled." *Id*.  It is the Commissioner who must make the final decision on the ultimate issue of disability.  *Duncan*, 801 F.2d at 855;  *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Watkins v. Schweiker*, 667 F.2d 954, 958 n. 1 (11th Cir. 1982).

7

The ALJ addressed Dr. Rehman's opinion as follows:

> Tabinda Rehman, M.D., offered a functional evaluation of the claimant (Ex. 19F).
> Dr. Rehman has been treating the claimant for a brief period beginning on August
> 20, 2009.  Dr. Rehman noted the claimant's history of ADHD, ODD, and
> dysthymia.  Dr. Rehman reported no cognitive deficits or disordered thought
> processes but did indicate that the claimant had a borderline intellect.  These
> findings are generally supported by Dr. Rehman's treatment records (Ex. 20F).

(Tr. 19.)

The ALJ inaccurately observed that Dr. Rehman only recently began treating R.M. in

August of 2009, as treatment notes go back as far as 2006.[1]  The ALJ's brief summary of Dr.

Rehman's opinion is largely accurate, albeit incomplete.  It does not appear that the ALJ

expressly rejected or gave little weight to Dr. Rehman's opinion.  Nonetheless, Edwards

correctly asserts that the ALJ completely ignored Dr. Rehman's finding that R.M. had a Global

Assessment of Functioning ("GAF") score of 50, which Dr. Rehman ascribed to R.M. on June 1,

2006, as well as on March 19, 2009.[2]  (Tr. 337, 535-36.)  Edwards contends that it is problematic

that the ALJ did not mention this GAF score, or consider other sources that consistently assessed

R.M. with low GAF scores.[3]  (ECF No. 14 at 15-17.)

The Commissioner argues that courts have found that GAF scores do not correlate to

Listing severity requirements.  (ECF No. 16 at 15, *citing Ham v. Barnhart*, 2002 U.S. Dist.

LEXIS 25438 at *19. (E.D. Va. July 19, 2002); *Denton v. Astrue*, 596 F.3d 419 (7th Cir. Ill.

2010)).  The Sixth Circuit has also observed that "the Commissioner 'has declined to endorse the

[GAF] score for use in the Social Security and SSI disability programs, and has indicated that

---

[1]  The Court is troubled by this inaccuracy, especially given the ALJ's failure to discuss
any of Dr. Rehman's past treatment notes in any meaningful depth.

[2]  The GAF scale reports a clinician's assessment of an individual's overall level of
functioning.  *Diagnostic & Statistical Manual of Mental Disorders*, 30-31 (American Psychiatric
Association, 4th ed. revised, 2000) ("DSM-IV").  An individual's GAF is rated between 0-100,
with lower numbers indicating more severe mental impairments.

[3]  On May 19, 2006, Lloyd Letterman, MSW, LSW, ascribed R.M. a GAF score of 48.
(Tr. 330.)  On August 22, 2006, Jean Cook, LPCC, ascribed R.M. a current GAF score of 48, and
also noted that 48 was her highest score in the past year.  (Tr. 345.)  Immediately after a suicide
attempt, R.M.'s GAF was assessed as between 15-20 on September 14, 2008.  (Tr. 464.)

[GAF] scores have no direct correlation to the severity requirements of the mental disorders listings.'" *Kennedy v. Astrue*, 247 Fed. Appx. 761, 766 (6th Cir. 2007) (internal quotations omitted); *see also DeBoard v. Comm'r of Soc. Sec.*, 211 Fed. Appx. 411 (6th Cir. 2006).

While GAF scores do not *per se* establish disability, they certainly are not irrelevant. Even the *Ham* decision cited by the Commissioner stated that "[w]hile the diagnosis of a psychological disorder such as post traumatic stress disorder or even a GAF of 50 are not alone sufficient to render an individual unable to work, these diagnoses are important evidence that should have been considered by the ALJ." 2002 U.S. Dist. LEXIS 25438 at *19 (remanding the matter because the ALJ failed to properly consider claimant's GAF score of 50); *Long v. Astrue*, 2011 U.S. Dist. LEXIS 34023 (M.D. Tenn. Mar. 7, 2011) ("Even though a GAF score is not dispositive in determining an individual's mental RFC, it can be helpful in assessing an individual's mental RFC."); *Bair v. Astrue*, 2008 U.S. Dist. LEXIS 72546, 27-28 (W.D. Pa. 2008) (recognizing that while "[t]here is no direct correlation between a claimant's GAF and the level of severity that an impairment must reach in order to render the claimant disabled under the Act[,] ... a GAF score, like any other medical evidence, must be considered by the ALJ."); *Simoneau v. Astrue*, 2007 U.S. Dist. LEXIS 38814 (D. Kan. 2007) (finding the ALJ improperly mentioned only those portions of a treating physician's report that were favorable to his finding of nondisability, while ignoring many unfavorable portions of the opinion such as a low GAF score); *cf. Nieves v. Astrue*, 2010 U.S. Dist. LEXIS 16176 (E.D. Pa., Jan. 29, 2010) ("[T]he ALJ may not 'cherry-pick' higher GAF scores in his analysis and ignore GAF scores that may support a disability.")

In children's SSI cases, a "marked" limitation is one which *seriously interferes with functioning*. 20 C.F.R. § 416.926a(e)(2)(i). A GAF score between 41 and 50 indicates *serious symptoms* or a serious impairment in social, occupational, or school *functioning*. A person who scores in this range may have suicidal ideation, severe obsessional rituals, no friends, and may be unable to keep a job. *See* DSM-IV at 34 (emphasis added). Though the reference to "serious" limitations in these two definitions are not necessarily synonymous, the treating source's finding as to a claimant's functional limitations is, at the very least, relevant. If the GAF score found by

9

Dr. Rehman was accepted by the ALJ, it is unclear, without some explanation, as to how such a score would be consistent with less than marked limitations in the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others. Reading the ALJ's opinion as a whole, it is unclear why she appears to discount R.M.'s numerous low GAF scores contained in the medical records.  The Commissioner cites another GAF assessment of 55-60, and argues that Dr. Rehman's treatment notes in 2009 show that R.M. was following instructions, and had age appropriate thought processes, mood/affect, and behavior.  (ECF No. 16 at 16.)  This Court has previously noted, "arguments [crafted by defense counsel] are of no consequence, as it is the opinion given by an administrative agency rather than counsel's '*post hoc* rationale' that is under the Court's consideration."  *See, e.g., Bable v. Astrue*, 2007 U.S. Dist. LEXIS 83635, 27-28 (N.D. Ohio, Oct. 31, 2007) (*citing NLRB v. Ky. River Cmty. Care, Inc.*, 532 U.S. 706, 715, n.1, (2001)); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) ("We cannot uphold a decision by an administrative agency … if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.")

The ALJ's decision fails to offer any meaningful discussion of Dr. Rehman's treatment notes, including her GAF findings.  A recent decision from another district court found reversible error where an ALJ failed to discuss a GAF score twice-assessed by a treating physician and the weight accorded to the score.  *Wamsley v. Astrue*, 780 F. Supp. 2d 1180, 1190 (D. Colo. 2011).  The *Wamsley* court explained that the "ALJ's failure to discuss the accorded weight forces this Court to re-weigh the evidence and surmise why the ALJ disregarded this evidence.  While one could theoretically presume that the ALJ rejected [the treating physician's] GAF score because it was unsupported by other evidence in the record or was not as detailed as the report issued by [a second treating physician], this is not a presumption this reviewing Court is allowed to make."  *Id*.  This Court agrees with the *Wamsley* court's rationale, and declines the Commissioner's invitation to speculate as to the weight the ALJ accorded to Dr. Rehman's GAF scores or the reasons for the weight given.

As such, it is recommended that this matter be remanded for a new opinion that

10

adequately discusses the opinions of R.M.'s treating physicians, including GAF scores, which are relevant to the determination of R.M.'s functioning level in the appropriate domains.[4]

### VII.  Decision

For the foregoing reasons, the Court finds the decision of the Commissioner not supported by substantial evidence.  Accordingly, the decision of the Commissioner should be VACATED and the case REMANDED, pursuant to 42 U.S.C. § 405(g) sentence four, for further proceedings consistent with this Report and Recommendation.

s/ Greg White
United States Magistrate Judge

Date: March 2, 2012


### OBJECTIONS
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**

---

[4]  Because it is recommended that the case be remanded, Edwards's first and third assignments of error are rendered moot.

11